Next case is 517-0451, the American Coal Company v. The Workers' Compensation Commission I know what you're thinking, Mr. Wirtz, but it can't actually be Groundhog Day because you're going first here. If you notice from our sign-in this morning, I signed in as the info lead to begin with. May it please the Court, Mr. Wissor, my name is Ken Wirtz and I represent the appellant in this case. I saved this case for last to review for the docket call, for this docket call. And I tried this case, I took the deposition, so I was generally aware of the facts of the case. And as I began that review, the line from Monty Python came to me, now for something completely different. A lot of movies running in the themes this week, a lot of movie titles. Which this case is, it does present a de novo issue for the Court. And then I spent the time going through the file, and after I had completed that, another line occurred to me, and that was, what a long, strange trip it's been with this case. And whether my client prevails in this appeal or not, whoever the judge is that writes the decision, if you would include that phrase, it at least would give me a smile. The citation would be, Truckin, the Grateful Dead, 1970. But I think in this case, and I'll tread here lightly, that there's one final thing that comes to mind, and that is, where do we begin with this case? And that's, of course, from Allison Looking Glass. I think where you begin is you concede that the commission erred in its original decision in relying on Thomas versus Freeman. Okay, and that is? No, not the commission, you mean the arbitrator. Well, the commission adopted it. Well, true. So now there's a dissent where Terrell says, that's nonsense, it should have been Freeman. So if we take that out, now you still have to face another issue. The arbitrator, affirmed and adopted by the commission, found that the respondent's experts were more credible than the claimant's experts, and the respondent's experts found that this man did not have CWP. So is that against the manifest way to the evidence? Because if that's not against the manifest way to the evidence, then the original commission decision should have been confirmed, even though they made an error on Thomas versus Freeman. I will answer that, but then I would like to return to Thomas. Go ahead. In regard to that issue about manifest way, it's interesting given our discussions in the other cases we've had here, that this case actually has pathology evidence. Of all the cases we have where we talk about pathology it being the gold standard. It was a biopsy. It was a biopsy that was examined under microscope. And that wedge biopsy was performed at this gentleman's right lower lobe. So we're talking about a defined area. In June of 2008, this gentleman's last work was September 2008. So we're talking three months here. This is right coincident with his last day. That wedge biopsy failed to reveal the presence of any colmacules, which is the hallmark for co-workers pneumoconiosis. Dr. Henry Smith, their B reader, and Dr. Hauser, who's not a B reader, who is an A reader, if I recall. He took the exam but didn't pass it, so that makes you an A reader. They both found the presence of pneumoconiosis in the right lower lobe. But you've got pathology evidence that says there were no colmacules. So I think that the decision of the conclusion of the arbitrator on whether there was pneumoconiosis or not on that day was correct. And for that reason, as you point out, Justice Hoffman, the commission's decision should have been upheld. Did I answer your question? Yeah. My position was, and this is the tough one, assuming, not assuming, if we find that the commission originally erred as a matter of law in applying Thermis versus Freeman on the question of last exposure, what do we do with the fact that the commission found the respondents' experts to be more credible than those as a petitioner when the respondents' experts found that they had no pneumoconiosis to begin with? And if you didn't have pneumoconiosis, it doesn't make any difference. They made a mistake on Thermis versus Freeman. And if there's a basis in the decision for it to be affirmed based upon their finding, then that is what should have occurred. Have I answered that to your satisfaction? Yeah. And that is something that we argued in the other sections of our brief. Of course, we begin with the Novo argument first. Could I talk about that? You act as if you're not that interested. No. What happened in this? Let me read to you first of all what the arbitrator, I think, the important language of the decision that bears on this. Mr. Wirtz, I should comment, by the way. Yes. When you prepare an appendix, you should really review it first, because you only gave us two pages of the arbitrator's decision. You were missing the front page and half of the guts from the center. But go ahead. You are absolutely correct in everything you said. And when I noticed it myself was when I reviewed for this argument. And I apologize for that. I'm usually very good about that. I know. You're very usual. It may have been a copy. I'm not sure how it happened. Hopefully, I assume the transcript, the record is correct. The record has it. It's in the record. Okay. Certainly. I do. That's an embarrassment to me, and I apologize. It happened. Arbitrator Gallagher, this is the one sentence that's of importance. The petitioner has not proven that the two days he worked for Respondent in capacity. I, for the life of me, don't see where that statement is incorrect based on the facts. The facts are that his two days of employment, September 22, 2008, and September 23, 2008, did not cause an occupational disease or aggravated. That was in the testimony of Dr. Repsher. That's unrebutted. Commissioner Terrell doesn't think much of Dr. Repsher, does he? No, and I like Commissioner Terrell. All right. He was feeling his oats that day, Brad. But I do not see from the facts in this case how that statement of Arbitrator Gallagher is incorrect. There is nothing in the record that indicates that those two days of work as a security guard caused his disease or aggravated his disease. There's simply nothing in there. And in our brief, I compared the facts here with the facts in Thermos, and I think they are similar. It's interesting, too, and actually, Justice Hoffman, I thought that you might pick up on this because you like to delve into the facts and the statute. You've always done that. In Section 1B of the Act, which I've cited in the statutes involved, it's page 10 of our appellant's brief if you want to turn to it and look at it. It talks about exposure. And specifically, if you drop down to where I've indented it that begins, if a minor, the statute reads, if a minor who is suffering or suffered from affective July 1, 1973, there's a rebuttable presumption that his pneumoconiosis rose out of such employment. Well, as you know, this gentleman wasn't a minor for American Coal ever. He was a security guard. So what do we do with that? Because it says a minor. And if you look back up in that section, it talks about an employee shall be conclusively deemed to have been exposed to the hazards, et cetera. The legislature used the term employee there. Then they later used the term minor. I'm not sure how that plays here, but if you read this literally in the facts of this case, if this gentleman has pneumoconiosis, isn't the presumption that it relates back to the company he worked for as a minor? The only problem that you have with it is the exact language in the statute says, the employer liable for the consequences of this act provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease claimed upon regardless of the length of time of such last exposure. So if the legislature intended to use the word minor, I suppose they would have. But I can understand your argument. Employees, this is any occupational disease. It's not merely black lung or CWP. So they would use the word employee to cover all employees no matter what their occupation is. So I understand your argument. So what they've done here, I think, rather intentionally, is created a presumption for someone who's a minor. He was a minor. He was exposed more than 10 years as a coal miner. That's all in the evidence. So there's a presumption here that whatever disease he has, if he has it, relates to that prior coal mine. And so my argument in that regard and the reason why I bring it up, if that is a correct interpretation, and you'll all need to look and look at the facts. One problem with your argument is Gallagher's conclusion and his opinion. The arbitrator finds the petitioner failed to prove that he was exposed to the hazards of an occupational disease on September the 23rd, 2008. The appropriate date of his last exposure is not when the petitioner was last exposed, but rather the date of last exposure which caused his incapacity. And he cites the thermist. Now, that's wrong. That's just wrong under Freedom. Now, he didn't interpret it the way you interpreted it by saying it doesn't relate to him because he wasn't a minor when he was last exposed. He turns around and says he failed to prove he was exposed because it was last exposure and incapacity. And then he turns around and says he didn't have any capacity anyway. So I don't know. Let me ask you this because I think we're sort of getting to the heart of the issue here on that particular point. Does the last exposure have to have any causal relationship to the disease that the person has? Not according to the statute. Not according to the statute because I read the statute literally and I presume that they meant to say what they said. And it says the employer liable for compensation shall be the employer in whose employment the employer was last exposed to the hazard. So when was he last exposed to coal dust if we're talking about a minor? And that exposure need not have to actually have caused it. He may have had it already. But the last place that he was exposed to that dust is the employer that's going to get stuck with the bill. I guess. Well, could I grab the statute? I think there's language there with no requirement that the disease actually result. Yeah, you're right. There is no language that it has to result. Regardless of the length of time of last exposure, and that's really critical in this case because you can't work with two days. From what you're saying, and I don't want to get off track here, but I take it that you believe Thermos was improperly decided. Oh, absolutely. I think Thermos was absolutely improperly decided under the reasoning of Freeman. But Freeman doesn't say that. Life comes on quickly in these cases. You'll have time, though, in reply. Thank you. You can follow up on that. Thank you. I will only indicate to you while you're sitting down, Freeman specifically says that the act makes an employer's liability contingent on the claimant's ability to link his condition to exposure on the final day of his employment with that employer. That sounds like causation. No. Not when we have 1D saying no requirement the disease actually resulted from My time is up. I'll come back. You'll be back. You'll be back. Counselor, you may respond. It's all right with you. I just like to breathe the rarefied air. Yes. May it please the Court. Mr. Wirtz, my name is Bruce Wirtz, and I represent Jimmy Boatwright. The primary argument here is a matter of law issue, not just by the statute, but by the case of Thomas Lethler, which I argued here. And it went to the Supreme Court, and it was decided, and it settled everything about this case. I remember that Lethler case because I'm the one that argued it. I'm surprised that my good friend, Mr. Wirtz, doesn't also remember that argument because he was a lawyer who represented the employer in that case. In fact, the employer cited the same case in Lethler that it did here, the thermos case. And here's what Lethler just clearly gets, and here's the quote from Lethler. Accordingly, whether Lethler was actually exposed to coal dust on his last day of work and whether that exposure, if any, was medically significant, are not determinative of the employer's liability. That was the end decision. And interestingly enough, this case is a good example of the court setting guide rails, letting the parties know in the future what counts. And this Lethler decision, except for the fact that we're arguing it again today, ended a lot of litigation. It ended a lot of arguments. It settled a lot of law. Now, Mr. Wirtzler, let's assume we agree with you. Freeman made thermos bad law, and they improperly relied upon thermos. What do we do with the finding that he didn't have CWP? What do we do with that? Two points. The first is you have to look, I believe, at the case, the decision of the commission as a whole. And exposure is the predicate to the disease. So if you're ruling on this case and you think there was no exposure, then you can say, well, then there was no disease from that exposure. But, Mr. Wirtzler, there was no disease from that exposure is entirely different than there was no disease at all. And both of his experts said this man did not have COPD. And the biopsy, the biopsy in this case, did not reveal the presence of COPD. Number one, I'm not so sure that the biopsy said that. I think there was emphysema found in the biopsy. Nonetheless, the commission gets to make a decision. So with that in mind, the single most important concession by Dr. Retscher when it comes to disease is he said, NIOSH, Department of Labor, and the American Thoracic Society are correct in their position statements that mining is equal to smoking and causing obstruction. Then he could not exclude coal dust as a cause of Mr. Boatwright's obstruction. Therefore, under this testimony, the only way you could not find obstruction is to find that the American Thoracic Society is wrong, Department of Labor is wrong, and the American Thoracic Society is wrong, which I think brings into question a manifest weight, which is one of the few times that the manifest weight should win. The commission should be found wrong. Dr. Retscher said that what these organizations, these authorities did wasn't worth a paper to be written on. It was garbage. He ridiculed them. What do you do with Wyatt? Well, there's more than one disease. There's CWP and there's COPD. And so- Found no evidence of coal workers' pneumocomiosis in any of the diagnostic studies? Well, first of all, with coal workers' pneumocomiosis, the only data that would make any difference would be the x-ray reading. However, this case was taken back at a time when we didn't ask the same questions that we would ask today. So Dr. Wyatt would have nothing to do with COPD, only with CWP. So there were two diseases here. And again, I think you have to take the commission's decision as a whole. What was in the commission's mind? They had already dismissed the case. No exposure when they made this other one. They remained consistent. However, I think it's clearly enough to open it up that they were this wrong as a matter of law. And I know there's a fine line between the guidelines of making this law that Leffler did and putting a- and tightening the noose around your neck. I guess it all depends on whether you're the winner or the loser in the case. But it is clear what it should be. And the commission got it wrong. And I say to you, if a commission thinks there was no exposure, how do you expect them to find disease? Well, yeah, but doesn't disease come first, exposure come second? I mean, there's no reason to even talk about exposure if you don't have a disease. I don't think it comes-no, I think that exposure comes first and then disease. Why? I mean, you know, if the man does not have the disease, it doesn't make any difference that he was exposed to something that's harmful to the body. So if he didn't catch it, it doesn't make any difference that he breathed in coal dust if he didn't have COPD. And I will give you, Justice Hoffman, what is my opinion. I cannot say, oh, this is the law. I'm saying this is my opinion. The case that the commission was ruling on was against Freeman Coal. And it was Mr. Boatwright. And it was Mr. Wertz, as the other guy. And that's the case they were ruling on. So in that case, they found there was no exposure. Once you find that, and that's your first-what difference does it make you find on disease? Find no disease. In other words, that first decision tainted the entirety. And you have to look, I believe, at the entirety of it. If now I could take a little bit more time on the Lefler decision and the exposure. This is one of the rules that hurts both parties sometimes. It helps both parties sometimes. Over the course of my career, I've had probably at least 100 cases where the coal miner worked for decades in Illinois. I believe clearly had a number of diseases related to that. But then they weren't sure they wanted to quit, and they went to work in Kentucky for a day. Or Pennsylvania for a day. Or even worse yet, they went there to take a test to drive the equipment to prove the employer they could do it. And I had to tell them, you're out. Because however short, you were exposed in Pennsylvania. Seek your remedy there. And so this is one of those cases where, is it fair? And I say under the law, yes. Because it told us what to do. It brought us consistency. And that is what fairness is, I believe, in the law. As I come up here, and as the guy comes into my office, I decide what to do. If I know what the rules are, I can be a good lawyer. And this provided us rules. And I think that the court will do this. But you have to take the entirety of that case into account. And what do you see when you look at that case? You see the case of the commission of Freeman versus Mr. Boatwright. That's what you're deciding on. And you have decided the thermos wins, and he wasn't exposed. And at that time, you make your decision on the disease. So you will decide. You will tell me what is right. But I think you look at that case in its entirety, and that's the decision that should be arrived at. So with that in mind, and knowing that there were two diseases, COPD and COPD, and the admission of Dr. Retscher, that if the Department of Labor, American Arrest Society, and NIOSH are correct, he is wrong. And I think it also passes that manifest way argument for disease. And I ask that the decision be affirmed, and I thank you for your time. Thank you, counsel. Counsel, you may reply. Thank you. I'll direct you again to page 10 of the appellant's brief, where the statutes involved are listed, and section 1E of the Act that's at the bottom. Disablement means an impairment or partial impairment, either temporary or permanent in the function of the body or any of the members of the body, or the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease. The term hazards is there. Dr. Retscher testified in regard to the dates that this gentleman worked on, September 22 and September 23, 2008, and I'm now quoting from my summary. It's usually fairly accurate. Those two days of work would not have any medical significance for him from a pulmonary standpoint. It's my position that he was not exposed to the hazard of disease on those two days. What if he received his final check in the mail from the mine? He stuck his check in there at the mine, sealed it up, and mailed it to him, and he opened it, and there was some dust inside. Is that the hazard of disease the legislature is talking about? I don't have anything more unless you have a question. Thank you, counsel. Thank you. Vote for your arguments in this matter. We'll be taking that as advisement and give this position to Dr. Retscher.